## Lucy A. Hoard v. David F. Stone.

*Reformation of lease—Laches—Judicial notice—Sunday contract.*

1. Ten years' delay in filing a bill for the reformation of a lease that was based on an oral agreement, is grave laches.

2. Judicial notice will be taken that the date of a lease in suit falls on Sunday, though neither party calls attention to it.

3. A lease, though dated on Sunday, will be considered to have been delivered and taken effect at the date of the acknowledgment of its execution.

4. A lease based on an oral arrangement stated the rental to be "five dollars." *Held,* that a bill to reform it so as to make the rent "five dollars annually" was properly dismissed where the parol negotiations did not clearly support complainant's claim and where complainant, after raising the question, had delayed ten years in filing the bill and had meantime made certain payments to defendant without claiming offset.

   But reformation was allowed to the extent of limiting the tenancy to such time as defendant should occupy the premises for the particular purpose which both parties evidently had in view when the lease was made and which was the apparent inducement for making it.

Appeal from Lapeer. (Stickney, J.) Oct. 15.—Jan. 6.

BILL to reform lease. Complainant appeals. Reversed.

*C. P. Black* and *S. B. Gaskill* for complainant. Where suits have been dismissed for laches it is because important witnesses have passed away or innocent third parties have acquired rights: *Campau v. VanDyke* 15 Mich. 371; *Russell v. Miller* 26 Mich. 1; *Harlow v. Lake Superior Iron Co.* 41 Mich. 583; but where defendant is not placed in any different position by lapse of time laches will not be considered: *Allore v. Jewell* 94 U. S. 506; *Sullivan v. Railroad* id. 811; *Wollaston v. Tribe* L. R. 9 Eq. 44; *May v. LeClaire* 11 Wall. 217; *Hatch v. Hatch* 9 Ves. 292.

*Geer & Williams* for defendant. . As to the evidence necessary to overcome the certificate of an acknowledging officer: *Monroe v. Poorman* 62 Ill. 524; *Marston v. Brittenham* 76 Ill. 611; *Crane v. Crane* 81 Ill. 165; *Lickmon v. Harding* 65 Ill. 505; *McPherson v. Sanborn* 88 Ill. 150; deeds of conveyance, leases or other written evidences of title will not be changed by proof of a verbal agreement, excepting in very clear cases and where the contract is proved to the entire satisfaction of the court and beyond a reasonable doubt: *Case v. Peters* 20 Mich. 298: *Tripp v. Hasceig* 20 Mich. 254; *Ludington v. Ford* 33 Mich. 124; *Hunter v. Hopkins* 12 Mich. 227; *Vary v. Shea* 36 Mich. 388; *Reynolds v. Campbell* 45 Mich. 529; where a party with full knowledge of all the facts sleeps upon his rights for a long time without asserting his equities, and no sufficient excuse is shown for the delay, his laches will be such as to present a bar to relief in a court of equity: *Rogers v. Simmons* 55 Ill. 76; *Carpenter v. Carpenter* 70 Ill. 457; *McVicker v. Filer* 31 Mich. 304; *Hastner v. Walrod* 83 Ill. 171; *Wright v. Peet* 36 Mich. 213; *DeArmand v. Phillips* Wal. Ch. 186.

CHAMPLIN, J. The bill was filed in the court below on the 19th day of July, 1883, to compel the reformation and correction of a written lease executed between the parties and bearing date April 14, 1872. Complainant alleges that on or about the 14th day of April, 1872, she entered into an oral contract with the defendant, in which she agreed to lease to him, for five dollars a year, a certain lot of land, twenty by thirty feet in size, situated in Lapeer county, for and

during the time he personally occupied the building as a
physician's office, at an annual rental of five dollars; that if,
at any time thereafter, the defendant desired to sell said
building, the complainant was to have the first right to pur-
chase the same; but if she should not then be able, she was
to sell said land to said defendant for such a price as they
might agree upon; and if they could not agree, then they
were to select three competent persons to decide for them;
that the defendant was to employ a competent person to
reduce said agreement to writing, and when so reduced to
writing, to bring the same to her for her signature and
acknowledgment; that the person so employed, either by
mistake, or in consequence of the fraud of the defendant,
omitted to provide in said writing for the payment of the
said five dollars annually as the consideration of said lease,
and also omitted the further provision that the defendant
was to hold said land while he occupied the building thereon
as a physician's office; that afterwards the said defendant
brought the said writing to the said complainant, and she,
not knowing what terms should be employed in such a con-
tract, and having faith and confidence in the said defendant's
honesty, and fully relying upon his statement that said paper
was correct in all particulars and embraced the terms of their
said agreement, she signed said writing without knowing
that it did not embrace the terms of their agreement; that
said defendant is in possession of said premises, and has been
since the making of said contract, and that the said contract,
if reformed, is worth over one hundred dollars, and that said
land is worth over one hundred dollars, and complainant
asks that said contract be reformed and specifically enforced.
The defendant answered, fully denying the allegations of the
complainant that he was to pay five dollars annually and
that he was to have the premises as long as he occupied it as
a physician's office; also the value of the land as alleged by
complainant; and replication was filed and evidence taken by
stipulation, upon which the court dismissed complainant's bill.

The testimony is conflicting, and no useful purpose will be
subserved by a review of the testimony given by the different

witnesses. The complainant owned and kept a hotel at Metamora, in Lapeer county. The defendant was a physician in good practice at that place. He boarded at the hotel, and occupied one of the rooms for an office. The treatment of his patients, and the administration of anæsthetics in the house, became a source of annoyance to complainant, and resulted in her leasing defendant a piece of ground upon which he had erected the office in question, under an agreement before made for such lease. He had desired to purchase the land, but she refused to sell, saying she preferred to lease. The lease was drawn by a Mr. Townsend, who testifies that he received his instructions as to its terms from defendant, in the complainant's presence, and made a memorandum of it at the time, and drew the lease three or four days later. The complainant denies being present or hearing any instructions given, and says that the first she knew of the lease defendant presented it to her, and requested her to sign it, in the kitchen of the hotel; that she was busy, and requested him to leave it until she could look it over with her husband, but he insisted on her signing it then and there, and upon his assurance that it had been drawn in accordance with their agreement she signed it, without reading it or knowing its contents. She says that shortly afterwards defendant paid her five dollars, and told her it was for the rent upon the lease; that she had settlements with defendant as often as once a year for board, and after they had settled in 1873 she asked him for five dollars for rent on the lease, and he denied owing her, and said the lease did not provide for his paying five dollars annually, but only five dollars as a consideration for the lease, and refused to pay it. She therefore was informed at this time that the lease was not drawn as she now claims it should have been, and no excuse is shown for delaying ten years before taking steps to have it rectified.

But aside from this, I think she has failed to show conclusively that the five dollars was to be paid annually. Her own statement of the verbal contract is this, as elicited by her counsel on her examination in chief:

"*Question.* Now you may state, Mrs. Hoard, what the terms of that verbal contract were.

*Answer.* Well, he wanted to lease a piece of land. He had been for two or three years, or a year or two, boarding with us; and I remember, before this building was put up, of picking berries—strawberries—there, and he came over there and marked off the ground. That was the summer before. 'I suppose,' says he, 'if I set my office here I would want it to come back as far as this.' I says: 'You would like, then, to set your office on the strawberry bed?' And he says, 'You are going to take it up?' And I says, 'Yes.' And he went on, and wanted to know every little while what I would take to let him put his office there. 'Now, Mrs. Hoard,' he says, 'it rests waiting for you to say what you will take for land enough ·to set my office on.' He wanted, I think, twenty by thirty feet; and I asked him to set it a little below where it is now. There was a barn in the corner of the lot, and he objected to it on account of the barn; and then he come in, and he says: 'I can get lumber and shingles of those that owe me, and all I would have to buy would be my glass and nails and paint; and if I can get the land to set it on, I will build it.' Well, we talked, as we had several times before; and I says: 'Dice Clark got five dollars for setting a blacksmith shop on the corner of that field over there [telling him where], before the railroad was built.' The railroad has now cut the end of the field off; it is used for a garden. 'Well,' he says, 'now will you take five dollars?' I said: 'Yes, we will take five dollars, and you can put up your office.' 'All right,' says he. Well, it run along, and he went and got his material together, and put up his office the next spring."

It will be noticed that nothing is said here about its being five dollars annually. In the next question she is asked what this five dollars was for, and she then says the use of the land was to be five dollars annually. In appears that in the years 1875 or 1876 the complainant and her husband rented a portion of this building from defendant, and complainant paid him forty-five dollars for the use thereof, without making any claim that she had an offset by way of rent for the use of the land. Nothing further need be said upon the subject of the rent. As before stated, the lease bears date the 14th day of April, 1872. The court will take judicial notice that this

was Sunday, although no mention is made of this fact by either party. On the 7th day of January, 1873, the execution of the lease was duly acknowledged by complainant, and was afterwards recorded, and it may be considered as having been delivered and as taking effect from the date of the acknowledgment.

I am satisfied from the evidence that the consideration of the lease was to be merely nominal, and that the particular inducement for complainant to enter into the lease was the benefit which she expected would accrue to her in her business of hotel-keeping, in providing for and entertaining as guests those who visited the defendant from a distance for treatment. The facts on this point are that Dr. Stone was a physician of large practice, having many patients from a distance. He had, for several years prior to 1872, had his office at complainant's hotel, and boarded there, and his patients, during that time, generally stopped at this hotel while being treated by him. In 1872 his business was increasing, and he concluded to build an office, and wished to buy the land in question, which is near to complainant's hotel, and on the same lot, for the purpose of erecting his office on it. Complainant did not wish to sell the land, and Dr. Stone then opened negotiations for the purchase of a piece of land near another hotel in the village of Metamora, known as the "Ackerman House." Complainant was anxious that Dr. Stone's office should not be located where his patients would naturally stop at the other hotel, and the arrangement was then made that she would lease this land to the defendant for a nominal consideration so long as he continued to use the building erected on it as an office. The real consideration for the leasing of this land was the benefit that complainant would derive from having defendant's office located where his patients would naturally lodge at complainant's hotel.

But these facts, in connection with the testimony, are also conclusive to my mind that there is a mistake in the written lease in the term limited thereby. The lease reads that the land is demised "for and during the time the said building shall be owned by the said party of the second part." This

would give the defendant the right to use it for a blacksmith shop or a saloon or other purpose foreign to the design of the parties when they entered into the agreement under the circumstances stated. The word " owned " should be erased, and the words " occupied as a physician's office " should be inserted in lieu thereof, in order to conform to the contract as actually made between the parties. It appears that this defect was not discovered until complainant's husband procured a copy of the lease from the register's office in 1877.

The decree of the court below must be reversed, and a decree entered here reforming said lease in the particular above specified. The complainant will recover her costs in this Court.

The other Justices concurred.